UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SOROUSH SHAHI, et al.,

      Plaintiffs,

    v.

JOSEPH B. EDLOW,

      Defendant.

Case No. 5:26-cv-03113-EJD

**ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION; DENYING MOTION TO STAY; ORDERING STATUS REPORT**

Re: Dkt. Nos. 14, 33

Plaintiffs, forty-five[1] citizens of Iran, filed the present suit against Defendant Joseph B. Edlow in his official capacity as Director of U.S. Citizenship and Immigration Services ("USCIS"), alleging that USCIS's hold on adjudication of their I-765 Applications for Employment Authorization ("I-765 Applications") violates the Administrative Procedures Act ("APA") and U.S. Constitution.  Compl., ECF No. 1.

Before the Court is Plaintiffs' Motion for a Preliminary Injunction.  Mot., ECF No. 14; Opp'n, ECF No. 31; Reply, ECF No. 32.  The Court held a hearing on July 9, 2026, and heard oral arguments from both parties.  ECF No. 35.  For the reasons stated on the record and in the discussion below, the Court **GRANTS** Plaintiffs' motion.

I.      **BACKGROUND**

This case is brought by forty-five citizens of Iran who hold various nonimmigrant statuses in the United States.  Compl. ¶ 8.  Plaintiffs all filed I-765 Applications with USCIS between September 2025 and March 2026 based on several categories of eligibility, including: Optical Practical Training ("OPT"), STEM OPT extensions, pending adjustment of status, and J-2

---

[1] Three Plaintiffs have been voluntarily dismissed since the initiation of this action.

Case No.: 5:26-cv-03113

ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION; DENYING MOTION TO STAY; ORDERING STATUS REPORT

dependent employment authorization. *Id.* Some Plaintiffs paid an additional $1,685 for premium processing, which according to the USCIS website, guarantees adjudication within 30 business days. *Id.* ¶ 74.

Plaintiffs allege that their I-765 Applications have not been adjudicated under the directive of two USCIS Policy Memoranda and a statement made by USCIS Spokesperson, Matthew Tragesser. USCIS issued the first Policy Memorandum ("Policy Memorandum I") on December 12, 2025, in response to a Presidential Proclamation restricting entry into the United States from nineteen countries, including Iran (PP 10949). Compl., Ex. A, ECF No. 1-1. Policy Memorandum I directs USCIS to "[p]lace a hold on pending benefit requests for aliens from countries listed in Presidential Proclamation (PP) 10949 . . . pending a comprehensive review, regardless of entry date." *Id.* The next month on January 1, 2026, USCIS issued the second Policy Memorandum ("Policy Memorandum II") in response to a Presidential Proclamation expanding the entry restriction to thirty-nine countries (PP 10998). Compl., Ex. B, ECF No. 1-2. Policy Memorandum II expanded the hold on pending benefits requests to those thirty-nine countries and defined "hold" as a measure that "allows a case to proceed through processing, up to final adjudication." *Id.* Policy Memorandum II also provides a national interest exception ("NIE"), but without a mechanism to apply for this exception. *Id.* In discussing these Policy Memoranda, Tragesser stated in a press release on March 31, 2026, that Iranian OPT applications are "banned and will not be processed." Compl., Ex. E, ECF No. 1-5.

Plaintiffs now seek a preliminary injunction that: (1) enjoins the hold on adjudication of Plaintiffs' I-765 Applications and delivery of Employment Authorization Documents ("EADs") pursuant to Policy Memorandum I and Policy Memorandum II; and (2) compels USCIS to adjudicate their applications and deliver EADs to eligible Plaintiffs within thirty days.

## II.    LEGAL STANDARD

To secure a preliminary injunction, a movant must make a clear showing that: (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of

Case No.: 5:26-cv-03113
ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION; DENYING MOTION TO STAY; ORDERING STATUS REPORT

2

preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20–22 (2008); Fed. R. Civ. P. 65. The moving party bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009). A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. This "clear showing" requires the plaintiff to "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Id.* (emphasis in original). The Ninth Circuit has held that courts may balance "the elements of the preliminary injunction test . . . so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (internal quotation marks omitted).

## III.    DISCUSSION

The Court will discuss in turn: (1) Defendant's motion to stay; (2) jurisdiction; (3) joinder and venue; and (4) the *Winter* factors.

### A.    Motion to Stay

Several courts, including many in the Northern District of California, have addressed substantially similar facts and arguments as those presented in this case. *See, e.g., Hedyati v. Edlow*, Case No. 26-cv-04054-VKD, at *11 (N.D. Cal. July 7, 2026); *Behdin v. Edlow*, No. 26-CV-00566-SVK, 2026 WL 1031079 (N.D. Cal. Apr. 16, 2026); *Wang v. Edlow*, No. 25-CV-10689-SVK, 2026 WL 1021204 (N.D. Cal. Apr. 15, 2026); *Varniab v. Edlow*, No. 25-CV-10602-SVK, 2026 WL 485490 (N.D. Cal. Feb. 20, 2026). Most notably, a recent District of Rhode Island order posted on June 2, 2026, vacated the two Policy Memoranda, among other USCIS policies. *Dorcas Int'l Inst. of Rhode Island v. United States Citizenship & Immigr. Servs.*, No. 26-CV-132-JJM-PAS, 2026 WL 1622708 (D.R.I. June 5, 2026), *judgment entered*, No. 26-CV-132-JJM-PAS, 2026 WL 1695954 (D.R.I. June 11, 2026). Defendant alerted the Court of this decision in a motion to stay filed on July 8, 2026, the night before the preliminary injunction hearing. ECF No. 33.

Case No.: 5:26-cv-03113
ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION; DENYING MOTION TO STAY; ORDERING STATUS REPORT

Defendant contends USCIS is following the directive in *Dorcas* and is currently processing Plaintiffs' applications and urges the Court to await further developments before deciding the present motion. Plaintiffs oppose a stay, arguing that the future of *Dorcas* remains uncertain given Defendant's ongoing attempts to seek an emergency stay of that order both in the District of Rhode Island and potentially the First Circuit Court of Appeals.

The Court agrees with Plaintiffs. Because Defendant has appealed the injunction in *Dorcas* and currently seeks an emergency stay of that order pending appeal, the status of *Dorcas* is uncertain. *See Hedyati v. Edlow*, Case No. 26-cv-04054- VKD, at *11 (N.D. Cal. July 7, 2026) (finding same). The Court therefore finds no reason to pause adjudication of this case currently. Defendant may re-raise its request if warranted by future developments.

### B.    Jurisdiction under 8 U.S.C. § 1252

Next, Defendant argues the Court lacks jurisdiction to hear any claims under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252(a)(2)(B)(ii), which provides in relevant part that "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii).

The Court finds this argument wholly without merit. Section 1252(a)(2)(B)(ii) only bars review of discretionary decisions, and it is well-established that USCIS has a mandatory duty to adjudicate immigration applications regardless of its discretionary decisions on their merits. *See, e.g., Hedayati v. Edlow*, No. 26-CV-04054-VKD, 2026 WL 1970745, at *6 (N.D. Cal. July 7, 2026); *Jamdar v. Edlow*, No. 5:25-cv-11002-BLF, 2026 WL 1763856, at *2–3 (N.D. Cal. June 18, 2026); *Behdin*, 2026 WL 1031079, at *12 ("[T]here is a difference between the [agency's] discretion over *how* to resolve an application and the [agency's] discretion over *whether* it resolves an application.") (internal quotation marks omitted) (quoting *Singh v. Still*, 470 F. Supp. 2d 1064, 1067 (N.D. Cal. 2007)); *Ayala v. Noem*, 781 F. Supp. 3d 1187, 1203 (D.N.M. 2025) ("Failure to

Case No.: 5:26-cv-03113
ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION; DENYING MOTION TO STAY; ORDERING STATUS REPORT

4

United States District Court
Northern District of California

act on Plaintiffs' applications, or delaying unreasonably in doing so, is not a decision or action at all—that is, in fact, the very problem."). Unlike the cases upon which Defendant relies, which address only the discretionary decisions to grant or deny an application, Plaintiffs here challenge USCIS's decision to withhold adjudication or adjudicate with unreasonable delay. *See, e.g., Zia v. Garland*, 112 F.4th 1194, 1200 (9th Cir. 2024) (denial of marriage waiver); *Nakka v. United States Citizenship & Immigr. Servs.*, 111 F.4th 995, 1007 (9th Cir. 2024) (denied adjustment); *Patel v. Garland*, 596 U.S. 328, 338–39 (2022) (factual findings underlying denial); *Garcia v. United States Citizenship & Immigr. Servs.*, 146 F.4th 743, 747–48 (9th Cir. 2025), *cert. denied sub nom. Cabello Garcia v. United States Citizenship & Immigr. Servs.*, 146 S. Ct. 1859, 224 L. Ed. 2d 361 (2026) (denied U visa adjustment); *Varniab*, 2026 WL 485490. The Court joins all others that have come before it and finds § 1252(a)(2)(B)(ii) does not bar judicial review of claims regarding USCIS's alleged withholding or unreasonable delay of adjudication.

### C.    Joinder and Venue

Defendant then challenges the joinder of forty-four Plaintiffs that reside out of this district. Defendant argues those Plaintiffs should be severed under Federal Rule of Civil Procedure 21 and dismissed for improper venue under Rule 12(b)(3).

Rule 21 allows courts to drop parties not properly joined. Permissive joinder under Rule 20(a), requires that: "(A) [plaintiffs] assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action."

Rule 12(b)(3) provides for motions to dismiss for improper venue. For suits where a defendant is an officer or employee of the United States, venue is proper "in any judicial district in which . . . (C) the plaintiff resides." 28 U.S.C. § 1391(e)(1).

The Court finds Plaintiffs here are properly joined and may bring their claims in this District. Plaintiffs' claims all arise from the same Policy Memoranda placing adjudicative holds on their applications because of their Iranian nationality, and common questions of law include the

Case No.: 5:26-cv-03113
ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION; DENYING MOTION TO STAY; ORDERING STATUS REPORT

United States District Court
Northern District of California

legality of this categorical hold. *See Wang*, 2026 WL 1021204, at \*3 (finding same); *see also, e.g., Lopez v. Jaddou*, No. 4:24-CV-2128, 2025 WL 3251626, at \*8 (S.D. Tex. Nov. 21, 2025); *Wagner v. Harris Cnty., Texas*, No. 4:23-CV-02886, 2024 WL 1639910, at \*2 (S.D. Tex. Apr. 15, 2024), *reconsideration denied*, No. 4:23-CV-2886, 2025 WL 950088 (S.D. Tex. Mar. 28, 2025); *Hernandez v. Jaddou*, 792 F. Supp. 3d 739, 745 (S.D. Tex. 2025). Given that joinder is proper, there is no need to sever the out-of-district Plaintiffs or dismiss for improper venue. *Wang*, 2026 WL 1021204, at \*3.

### D. *Winter* Factors

Moving to the merits of Plaintiffs' motion for a preliminary injunction, the Court will examine the *Winter* factors: (1) likelihood of success on the merits; (2) irreparable harm; and (3) the balance of equities and the public interest.

#### 1. Likelihood of Success on the Merits – Withholding or Unreasonable Delay under 5 U.S.C § 706(1)

While Plaintiffs argue they are likely to succeed on several claims, the Court need only examine one: unlawful withholding or unreasonable delay under 5 U.S.C § 706(1). *See Museum of Handcar Tech. LLC v. Transportation Agency for Monterey Cnty.*, 778 F. Supp. 3d 1065, 1079 (N.D. Cal. 2025), *vacated in part on other grounds*, No. 24-CV-08598-EKL, 2025 WL 1810265 (N.D. Cal. June 30, 2025) ("[A plaintiff] does not need to show a likelihood of success on every claim in order to obtain a preliminary injunction.").

The Ninth Circuit distinguishes agency withholding from agency delay. Withholding occurs "when an agency refuses to accept, in any form, a request that it take a required action." *Al Otro Lado v. Exec. Off. for Immigr. Rev.*, 138 F.4th 1102, 1122 (9th Cir.), *cert. granted sub nom. Noem v. Al Otro Lado*, 146 S. Ct. 604, 223 L. Ed. 2d 225 (2025), and *rev'd and remanded on other grounds sub nom. Mullin v. Al Otro Lado*, No. 25-5, 2026 WL 1825741 (U.S. June 25, 2026). This refusal violates APA's requirement that agencies "conclude a matter presented to it." 5 U.S.C. § 555(b). On the other hand, agency actions are examined through the lens of "delay"

Case No.: 5:26-cv-03113
ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION; DENYING MOTION TO STAY; ORDERING STATUS REPORT

United States District Court
Northern District of California

when "one expects that, with the passage of time (maybe even an unreasonable amount of time), the action eventually will be completed." *Al Otro Lado*, 138 F.4th at 1122. In these cases, plaintiffs must show that the delay was "unreasonable" in violation of the APA's requirement that it must conclude a matter presented to it "within a reasonable time." 5 U.S.C. § 555(b). The reasonableness of any delay is a fact-intensive inquiry analyzed under *TRAC* factors. *Telecommunications Rsch. & Action Ctr. v. F.C.C.*, 750 F.2d 70, 79–80 (D.C. Cir. 1984); *Indep. Min. Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997).

The Court finds Plaintiffs are likely to succeed in proving the Policy Memoranda and USCIS's subsequent withholding of adjudication constitutes both unlawful withholding and unreasonable delay.

### a.      Final Agency Action

As an initial matter, however, the Court rejects Defendant's argument that the Court lacks jurisdiction over plaintiffs' APA claims because there is no "final" agency action or mandatory duty to act. *See* 5 U.S.C. § 701(a)(1)-(2); 5 U.S.C. § 704.

An agency action is "final" if it is: (1) the consummation of an agency's decision-making process, and (2) an action by which rights or obligations have been determined or from which legal consequences will flow. *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). The Policy Memoranda satisfy both requirements. Several courts have found that significant pauses and blanket moratoria on immigration applications such as this mark the consummation of an agency's decision-making process. *See Massachusetts v. Trump*, 790 F. Supp. 3d 8, 26 (D. Mass. 2025) ("significant pauses and blanket moratoria are final agency actions that cannot be exempted from judicial review merely by being characterized as intermediate"). The Policy Memoranda also affect Plaintiffs' rights—without adjudication, they cannot work in the United States. And the possibility that the Policy Memoranda may be revised in the future does not defeat finality. *See Appalachian Power Co. v. E.P.A.*, 208 F.3d 1015, 1022 (D.C. Cir. 2000) ("[T]he fact that a law may be altered in the future has nothing to do with whether it is subject to judicial review at the

Case No.: 5:26-cv-03113
ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION; DENYING MOTION TO STAY; ORDERING STATUS REPORT

moment."). As for Defendant's argument that there is no "mandatory" duty to adjudicate applications, for all the reasons described in Section III.A., the Court finds this position without merit.

### b.    Withholding

Next, the Court finds the Policy Memoranda likely constitute an unlawful withholding. Unlawful withholding requires plaintiffs to show that a defendant failed to take a "discrete agency action" that it is legally "required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). It is well established that USCIS has the duty to adjudicate immigration applications, a point discussed in the sections above, and a point Defendant conceded to in hearings before other courts. *See Behdin*, 2026 WL 1031079. Defendant's arguments to the contrary confuse the decision to grant or deny an application with the decision to adjudicate an application at all—the former is discretionary, but the latter is not. Evidence that USCIS "holding" Plaintiffs' applications in abeyance and Tragesser's statement that Iranian OPT applications are "banned and will not be processed" could display a violation of Defendant's mandatory duty to adjudicate.

### c.    Unreasonable Delay

The Court also finds the Policy Memoranda created an unreasonable delay in the adjudication of Plaintiffs' applications. As noted above, courts examine unreasonable delay under the six *TRAC* factors:

> (1) the time agencies take to make decisions must be governed by a "rule of reason"[;]
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason[;]
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake[;]
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority[;]
> (5) the court should also take into account the nature and extent of the interests prejudiced by the delay[;] and
> (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed."

Case No.: 5:26-cv-03113
ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION; DENYING MOTION TO STAY; ORDERING STATUS REPORT

*TRAC*, 750 F.2d at 80.  The Court finds these factors weigh in favor of granting a preliminary injunction.

First, Defendant contends USCIS explains its "rule of reason" on its website, which provides that USCIS adjudicates I-765 Applications in the order in which they are received, and the average processing time ranges from 9 to 11.5 months.  The Court finds this unpersuasive.  It is true that processing applications in the order in which they are received can constitute a rule of reason; but the Policy Memoranda presumably interfered with that process by indefinitely holding final adjudication of applications submitted by Plaintiffs, thereby allowing applications submitted after Plaintiffs to be adjudicated first.

Second, Defendant acknowledges there is a Congressional table indicating a 180-day period to adjudicate I-765 Applications is reasonable, 8 U.S.C. § 1571(b), but notes that this is merely "aspirational," and regardless, some of Plaintiffs' applications have not yet been pending that long.  The Court also finds this unpersuasive, particularly for the Plaintiffs that paid an additional $1,685 for "premium processing" of their I-765 Applications.  Absent an alternative timeline presented by Defendant, the Court finds the 180-day expectation under 8 U.S.C. § 1571(b) provides the best guidance for determining when a delay in processing an I-765 Application becomes unreasonable.

Third, factors considering the dangers to human health and welfare, nature of delay, and nature and extent of prejudice are typically examined together.  Defendant argues that the only claimed injury or damage to human welfare is lack of employment which is insufficient to support finding unreasonable delay.  The Court disagrees.  There is no authority providing that lack of employment cannot damage human welfare; to the contrary, the Court finds Plaintiffs have sufficiently shown how the loss of employment and hardships that follow, including housing insecurity, food insecurity, and loss of health care, weighs in its favor.

Fourth, as for competing priorities, Defendant argues that demanding immediate adjudication disrupts the agency's priorities because it allows Plaintiffs to effectively "leapfrog"

Case No.: 5:26-cv-03113
ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION; DENYING MOTION TO STAY; ORDERING STATUS REPORT

United States District Court
Northern District of California

ahead of the other applications pending.  The Court finds this argument without merit.  As mentioned above, the Court presumes other applicants have already "leapfrogged" ahead of Plaintiffs because of the adjudicative holds.

And finally, Defendant argues there is no evidence that USCIS exhibited any impropriety in connection with Plaintiffs' I-765 applications.  On this point, the Court agrees; but regardless, a finding of "impropriety" is unnecessary.

### 2.      Irreparable Harm

Moving to the second *Winter* factor, Plaintiffs largely cite their inability to work while their applications are pending indefinitely as irreparable harm.

Plaintiffs attach declarations attesting to loss of housing, loss of funding for educational projects, loss of scholarships, loss of tenure-track professorships, employment, loss of health insurance, inability to receive funds from family in Iran due to sanctions, and disruption of pediatric care for U.S.-citizen children.  Plaintiffs also highlight the heightened harm suffered by the OPT Plaintiffs.  The OPT employment benefit for F-1 students is governed by strict regulatory timelines that cannot be tolled.  Students must request OPT before the academic program end date, with employment begun within a defined period, or termination follows automatically.  8 C.F.R. § 214.2(f)(10).  And because OPT authorization runs from the program end date rather than the date of approval, 8 C.F.R. § 214.2(f)(10)(ii)(A), each day of agency delay consumes a day of the authorization period itself.  For non-STEM OPT recipients whose total authorization is 12 months, there is no mechanism to recoup the lost time. STEM OPT applicants receive an automatic 180-day extension, 8 C.F.R. § 274a.12(b)(6)(iv) and 8 C.F.R. § 214.2(f)(11)(i)(C), but once that window closes, the result is the same.  If the hold persists beyond that window, OPT Plaintiffs lose work authorization entirely with no available remedy.

Defendant briefly responds by highlighting that only twenty Plaintiffs submitted declarations and arguing that the allegations involve generalized or speculative harm rather than individualized and concrete harm specific to each Plaintiff.

Case No.: 5:26-cv-03113
ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION; DENYING MOTION TO STAY; ORDERING STATUS REPORT

The Court finds Plaintiffs have presented sufficient proof of irreparable harm at this time. Although economic harm may generally be insufficient to establish irreparable injury, Plaintiffs argue the harm here extends beyond ordinary economic injury because they will lose or have lost the ability to work at all, implicating the fundamental ability to earn a livelihood, support their families, and remain self-sufficient. *See Bowser v. Noem,* No. 26-CV-10382-AK, 2026 WL 555624, at *9 (D. Mass. Feb. 27, 2026) (in case challenging same Policy Memos, citing as irreparable harm inability to travel to visit family, inability to make basic life decisions, and significant emotional strain). The Ninth Circuit has held that the "loss of opportunity to pursue [one's] chosen profession[ ] constitutes irreparable harm." *Am. Fed'n of Gov't Emps., AFL-CIO v. United States Off. of Pers. Mgmt.*, 781 F. Supp. 3d 920, 940–41 (N.D. Cal. 2025), *appeal dismissed*, No. 25-1677, 2025 WL 2976744 (9th Cir. Sept. 29, 2025) (quoting *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014). Plaintiffs also challenge a generally applicable policy and seek non-individualized relief, so only one Plaintiff must demonstrate standing for the court to award relief. *Filazapovich v. Dep't of State*, 560 F. Supp. 3d 203, 225 (D.D.C. 2021), *rev'd and remanded sub nom. Goodluck v. Biden*, 104 F.4th 920 (D.C. Cir. 2024), and *rev'd and remanded sub nom. Goodluck v. Biden*, 104 F.4th 920 (D.C. Cir. 2024).

### 3.    Balance of Equities and the Public Interest

Finally, in weighing the equities, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (citation omitted). Weighing the public interest, on the other hand, "primarily addresses impact on non-parties rather than parties." *CTIA - The Wireless Ass'n v. City of Berkeley, California*, 928 F.3d 832, 852 (9th Cir. 2019). These factors merge when the government is a party. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

The Court finds these factors weigh in Plaintiffs' favor as well. There is no stated national security concern specific to any Plaintiff, and even if there were, withholding final adjudication of their I-765 Applications while Plaintiffs are already legally present in the country would not serve

Case No.: 5:26-cv-03113
ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION; DENYING MOTION TO STAY; ORDERING STATUS REPORT

United States District Court
Northern District of California

any national security interests.   Public interest also favors prompt resolution of immigration applications, as well as the retention of the researchers, physicians, scientists, and skilled workers whose work has already been determined to serve the national interest.

### E.    Contents of the Preliminary Injunction

The Court agrees with Defendant that deciding the specific timeline upon which USCIS must adjudicate Plaintiffs' applications requires a more fulsome record and is more appropriate on a motion for summary judgment.  The Court therefore denies Plaintiffs' request for an order to adjudicate all applications in thirty days.

However, to remedy the Court's finding that the Policy Memoranda likely created an unreasonable delay in adjudication among all Plaintiffs, the Court finds it most reasonable to implement the remedy fashioned in a similar case by Magistrate Judge DeMarchi.  *See Hedayati*, 2026 WL 1970745, at *6.  The Court will order USCIS to resume adjudication of Plaintiffs' I-765 Applications "in a manner consistent with USCIS's non-hold policies." *Id.*  This ensures a return to the status quo without requiring an examination of each Plaintiffs' individual facts.

## IV.    CONCLUSION

Based on the foregoing, the Court **DENIES** Defendant's motion to stay without prejudice and **GRANTS** Plaintiffs' motion for preliminary injunction.  USCIS is enjoined from applying the hold imposed by the Policy Memoranda to any I-765 Application filed by any Plaintiff.  To the extent it has not already done so, USCIS must resume adjudicating the remaining Plaintiffs' I-765 Applications in a manner consistent with USCIS's non-hold policies had the enjoined policies never been enacted.

By **July 30, 2026**, Defendant shall file a status report confirming that this Order has been communicated to USCIS and that the remaining Plaintiffs' applications are currently being adjudicated in a manner consistent with USCIS's processes had the enjoined policies never been enacted.

Case No.: 5:26-cv-03113
ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION; DENYING MOTION TO STAY; ORDERING STATUS REPORT

United States District Court
Northern District of California

**IT IS SO ORDERED.**

Dated: July 14, 2026

_____
Edward J. Davila
United States District Judge

Case No.: 5:26-cv-03113
ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION; DENYING MOTION TO STAY; ORDERING STATUS REPORT